## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAMUEL COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-635-GKF-TLW |
| | ) | |
| DIRECTV, INC. and DIRECTV, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the Motion of defendant DIRECTV, LLC ("DIRECTV")[1] to Dismiss [Dkt. #16] and plaintiff Samuel Collins's Conditional Motion for Time Within Which to Seek Leave to Amend Should Court Grant Defendants' Motion to Dismiss [Dkt. #22]. For the reasons given below, DIRECTV's motion is denied, and Collins's motion is moot.

### I.      Background

As alleged in Collins's Complaint, DIRECTV oversees a network of providers who supply DIRECTV with a workforce of technicians, either by serving as their direct employer or by subcontracting with technicians dubbed as independent contractors. [Dkt. #2, p. 4, ¶ 11]. Collins alleges DIRECTV is the primary, if not only, client of the providers, and is the source of substantially all of each provider's income. [*Id.*, ¶ 14]. He further alleges DIRECTV controls the network of providers through means including detailed Provider Agreements, which each contain the same policies, procedures, performance standards, and payment method requirements. [*Id.*, p. 5, ¶ 16]. These Provider Agreements allegedly enable DIRECTV to control nearly every facet of

---

[1] DIRECTV represents that effective January 1, 2012, DIRECTV, Inc. merged into DIRECTV, LLC and out of existence. Plaintiff has sued two defendants here. The motion to dismiss shall be considered as to both named defendants.

the technicians' work, making each technician's essential job duties virtually identical no matter where or for which provider he works. [*Id.*, ¶ 18]. Collins further alleges DIRECTV promulgates detailed instructions for how installations are to be completed, publishes training materials technicians are required to review, and mandates certification requirements with which technicians must comply before they may be assigned DIRECTV work orders. [*Id.*, p. 9, ¶¶ 36–38].

Collins alleges that between approximately January 2010 and November 2012, he worked as a technician for DIRECTV and DTV Home Services II, LLC, one of the providers in DIRECTV's provider network.[2] [*Id.*, p. 13, ¶ 59]. He alleges his principal job duty as a technician was to install and repair DIRECTV satellite television service. [*Id.*, p. 4, ¶ 10]. He further alleges he received daily work schedules through DIRECTV's dispatching systems, was required to check in with DIRECTV by telephone upon arriving at an assigned job site, and was required to report to DIRECTV when an installation was complete. [*Id.*, pp. 5–6, ¶¶ 19–20]. He also alleges he was required to wear a uniform with DIRECTV insignia on it, display DIRECTV insignia on vehicles driven to customers' homes, show a DIRECTV ID card to customers, and hold himself out as an agent of DIRECTV. [*Id.*, p. 5, ¶ 18; p. 6, ¶ 21; p. 9, ¶ 35].

Collins alleges DIRECTV effectively controlled his pay through a piece-rate pay system it mandated in its Provider Agreements. [*Id.*, p. 10, ¶¶ 43–44]. Under this pay system, Collins alleges, he was not paid for all the hours he worked for DIRECTV; rather, he was paid on a per-task basis for completing certain enumerated "productive" tasks. [*Id.*, ¶ 46]. He alleges he performed other necessary work each week in addition to these compensable tasks, such as

---

[2] In his response to DIRECTV's Motion to Dismiss, Collins clarifies that he worked for subcontractors who contracted with DTV Home Services II, LLC. [Dkt. #21, p. 7]. Collins does not identify the subcontractors for which he worked.

assembling satellite dishes, driving to and between job assignments, and working on "rollback" installations where he had to return and perform additional work on previously completed installations. [*Id.*, ¶ 47]. He further alleges he was subject to "chargebacks" wherein DIRECTV would deduct amounts from his pay if there were issues with an installation or questions from the customer. [*Id.*, p. 11, ¶ 49]. He also alleges he was required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. [*Id.*, ¶ 50].

Collins asserts the control DIRECTV exerted over him is sufficient to establish that he was an employee of DIRECTV pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), rather than an independent contractor. [*Id.*, p. 9, ¶ 34]. He also alleges he "spent in excess of 60 hours per week performing tasks for the benefit of [DIRECTV]," but was not paid the overtime premium required by the FLSA for work done beyond 40 hours in a given workweek. [*Id.*, p. 11, ¶ 53; p. 13, ¶ 60]. He further alleges DIRECTV's policies and practices of imposing chargebacks, failing to compensate him for all hours worked, and failing to reimburse his necessary business expenses resulted in him being "routinely subjected to working at an effective wage rate of less than the applicable minimum wage." [*Id.*, p. 13, ¶ 61]. He claims DIRECTV's piece-rate pay system "constitutes an effort to deliberately deny [him] earned wages and overtime compensation in violation of the FLSA." [*Id.*, p. 12, ¶ 55]. He thus contends DIRECTV "willfully violated the FLSA by refusing and failing to pay [him] overtime and minimum wages." [*Id.*, p. 15, ¶ 70].

In August 2012, Collins opted in to an FLSA class action in the Eastern District of Louisiana styled *Lang v. DIRECTV, Inc., et al.*, Case No. 10-1085-NJB [*Lang*, Dkt. #298]. On September 3, 2013, the *Lang* class was decertified, and the opt-in plaintiffs were dismissed without prejudice to pursue their individual claims elsewhere. [*Lang*, Dkt. #467]. In dismissing

these plaintiffs, the court ordered the statute of limitations for each opt-in plaintiff to be tolled for 60 days. [*Id.*, p. 2]. On November 1, 2013, within this 60-day period, Collins and other plaintiffs filed an action in the Central District of California styled *Acfalle v. DirecTV*, Case No. 13-8108-ABC. On July 22, 2014, the *Acfalle* court dismissed the plaintiffs with FLSA-only claims without prejudice and tolled the statute of limitations for 90 days to permit them to refile their claims closer to their home states. [Dkt. #16-1, p. 8]. On October 20, 2014, within this 90-day period, Collins filed his Complaint in this action. [Dkt. #2].

## II.      Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this standard, "specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *S.E.C. v. Shields*, 744 F.3d 633, 641 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). However, a plaintiff must supply enough factual matter, taken as true, "to raise a right to relief above the speculative level" and thereby "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556).

### III. Discussion

A. <u>"Employers" and "Employees" Under the FLSA</u>

DIRECTV first contends Collins has not pleaded the existence of an employment relationship with DIRECTV, and therefore has not pleaded facts that would entitle him to recovery against DIRECTV under the FLSA. [Dkt. #16, pp. 11–12].

The FLSA's definition of an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee," meanwhile, is defined as "any individual employed by an employer." § 203(e)(1). The "striking breadth" of these definitions "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency principles." *Johnson v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 371 F.3d 723, 729 (10th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992)). Accordingly, in determining whether Collins was an employee of DIRECTV for FLSA purposes, the court's analysis "is not limited by traditional common law concepts." *Id.* (quoting *Dole v. Snell,* 875 F.2d 802, 804 (10th Cir. 1989)). Rather, it "focuses on the economic realities." *Id.* The focal point in deciding whether an individual is an employee is "whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." *Dole*, 875 F.2d at 804 (quoting *Doty v. Elias,* 733 F.2d 720, 722–23 (10th Cir. 1984)). In applying this test, the courts in this circuit generally focus on the following five factors:

(1)  the degree of control exerted by the alleged employer over the worker;
(2)  the worker's opportunity for profit or loss;
(3)  the worker's investment in the business;
(4)  the permanence of the working relationship; and
(5)  the degree of skill required to perform the work.

733 F.2d at 723. "An additional commonly considered factor is the extent to which the work is an integral part of the alleged employer's business." *Dole,* 875 F.2d at 805. "[N]o one of these factors in isolation is dispositive; rather, the test is based upon a totality of the circumstances." *Id.*

### 1. Degree of Control and Supervision

Here, Collins alleges DIRECTV gave him his daily schedule, required him to check in with DIRECTV upon arrival at each job site and upon completion of each job, and mandated particularized methods and standards of installation. He also alleges he was required to wear a uniform bearing DIRECTV insignia, display DIRECTV insignia on vehicles driven to customers' homes, show a DIRECTV ID card to customers, and hold himself out as an agent of DIRECTV. He further alleges DIRECTV issued training and certification requirements with which he was required to comply, and controlled the method by which he was paid. In sum, he alleges DIRECTV controlled "what work [he] performed, where that work was performed, when that work was performed, and how that work was performed." [Dkt. #2, p. 8, ¶ 32]. Given the degree of control DIRECTV allegedly exercised over Collins's work, "[i]t is virtually impossible to look upon [Collins] as having the independence which characterizes a person conducting [his] own business." *Dole*, 875 F.2d at 808. This factor thus weighs in favor of finding that Collins plausibly alleges he was an employee of DIRECTV.

### 2. Worker's Opportunity for Profit or Loss

If Collins "could bid on jobs at a set amount and correspondingly set [his] own hours or schedule, [he] would have the opportunity for profit or loss." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998). "But toiling for money on a piecework basis is more like wages than an opportunity for 'profit.'" *Dole*, 875 F.2d at 809. As noted above, Collins alleges

DIRECTV set his daily schedules, directed him to specific job sites, and set the rate of pay for his work, paying him on a piece-rate basis. These allegations suggest Collins "had no control over the essential determinants of profits in a business," as his "earnings did not depend upon [his] judgment or initiative, but on [DIRECTV's] need for [his] work." *Id.* at 810. Thus, these allegations do not suggest Collins had the opportunity for profit or loss "usually associated with an independent business." *Id.*

### 3. Worker's Investment in the Business

The worker's investment which must be considered as a factor is "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Baker*, 137 F.3d at 1442 (quoting *Dole*, 875 F.2d at 810). "[T]he fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status." *Dole*, 875 F.2d at 810. And though Collins acknowledges he was required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables, his allegations plausibly allege employee status because this court will, at summary judgment, "compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1442.

### 4. Permanence of the Working Relationship

"'Independent contractors' often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration." *Dole*, 875 F.2d at 811. Here, Collins alleges that he worked as a technician for DIRECTV and a provider in DIRECTV's provider network from approximately January 2010 to November 2012. He alleges DIRECTV was the "primary, if not the only, client" of the providers, and was the source of

substantially all of each provider's income. It is therefore reasonable to infer that the work Collins alleges he performed for the provider was ultimately for the benefit of DIRECTV. Indeed, Collins alleges he received his daily work schedules from DIRECTV and spent in excess of 60 hours per week performing tasks for DIRECTV's benefit. These allegations suggest Collins had a continuous and indefinite working relationship with DIRECTV which was exclusive of other employers. This factor thus weighs in favor of finding Collins plausibly alleges he was an employee of DIRECTV.

5. *Degree of Skill Required to Perform Work*

"The lack of the requirement of specialized skills is indicative of employee status." *Dole*, 875 F.2d at 811. But "the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." *Baker*, 137 F.3d at 1443 (quoting *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1295 (3rd Cir. 1991)). Here, Collins alleges he was required to conform to DIRECTV's particularized methods and standards of installation, and that he "was not given meaningful discretion in how he performed installations." [Dkt. #2, p. 9, ¶ 36]. These allegations suggest Collins did not use his skills as a technician in an independent way, and thus do not indicate he was an independent contractor.

6. *Integral Part of the Alleged Employer's Business*

"The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 815 (6th Cir. 2015). Here, the technicians' work in installing and repairing DIRECTV satellite television service is clearly an integral part of DIRECTV's business. Thus, this factor also weighs in favor of concluding that Collins plausibly alleges he was an employee of DIRECTV.

For the foregoing reasons, based on the totality of the circumstances, Collins alleges sufficient facts to plausibly show he was an employee of DIRECTV as defined by the FLSA.[3]

B. <u>Minimum Wage and Overtime Requirements</u>

DIRECTV next argues Collins has not pleaded sufficient facts to establish a violation of the FLSA's minimum wage requirements, as he does not state "(1) how many hours he worked for which he was not compensated and in which weeks he worked those hours; (2) what his rate of pay was; (3) what amount of business expenses he incurred for which he was not reimbursed; and (4) the number and amount of charge backs that were allegedly deducted from his pay." [Dkt. #16, p. 14]. DIRECTV further contends Collins fails to specify a workweek in which he worked in excess of forty hours and was not paid overtime wages. [*Id.*, p. 17]. Relying on the standards for pleading FLSA overtime and minimum wage claims set forth in *Landers v. Quality Communications, Inc.,* 771 F.3d 638 (9th Cir. 2014), DIRECTV contends Collins must plead these "essential" facts for his claims to survive a 12(b)(6) motion. [*Id.*, pp. 14–15, 17–19].

In *Landers*, the Ninth Circuit determined a plaintiff failed to state an FLSA claim for unpaid minimum or overtime wages where he did not "allege facts showing that there was a given week in which he was entitled to but denied minimum wages or overtime wages." 771 F.3d at 645. While the *Landers* court did not require plaintiffs to plead the compensation owed to

---

[3] The court notes that in similar cases, other courts have likewise found plaintiffs who worked as technicians for DIRECTV plausibly pleaded that they were employees of DIRECTV for purposes of the FLSA. *See, e.g., Chesley v. DIRECTV, Inc.*, 2015 WL 3549129, at *4 (D.N.H. June 8, 2015); *Alston v. DIRECTV, Inc.*, 2015 WL 2451219, at *4 (D.S.C. May 22, 2015); *Doucette v. DIRECTV, Inc.*, 2015 WL 2373271, at *5 (W.D. Tenn. May 18, 2015); *Berger v. DIRECTV, Inc.,* 2015 WL 1799996, at *6 (D. Or. April 16, 2015); *Renteria–Camacho v. DIRECTV, Inc.,* 2015 WL 1399707, at *2 (D. Kan. Mar. 26, 2015); *Arnold v. DIRECTV, Inc.,* 2011 WL 839636, at *6–7 (E.D. Mo. Mar. 7, 2011); *Lang v. DirecTV, Inc.,* 735 F.Supp.2d 421, 432 (E.D. La. 2010).

them "with mathematical precision," it determined "they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646. The court further held a plaintiff "may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645; *see also Boon v. Canon Bus. Solutions, Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) (holding a plaintiff who "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week . . . satisf[ied] the pleading requirements of *Landers*").

Other courts have determined a complaint under the FLSA for minimum wages or overtime wages need not include these specific facts to survive a motion to dismiss. *See, e.g., Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). The Tenth Circuit has not set forth the standard by which its district courts must evaluate the allegations of a FLSA minimum wage or overtime claim. But even under the more stringent standard in *Landers*, Collins's allegations are sufficient to plead such claims. Collins alleges that he "routinely worked more than 40 hours per week" [Dkt. #2, p. 11, ¶ 52], that he "was unlawfully deprived of overtime compensation" [*id.*, p. 13, ¶ 59], and that DIRECTV's policies and practices caused him to be "routinely subjected to working at an effective wage rate of less than the applicable minimum wage" [*id.*, ¶ 61]. In support of these statements, he alleges he "spent in excess of 60 hours per week performing tasks for the benefit of [DIRECTV], many unpaid." [*Id.*, p. 13, ¶ 60]. He also "identifie[s] tasks for which he was not paid" (*Boon*, 592 F. App'x at 632), and alleges he performed these tasks "each week during the relevant time period." [Dkt. #2, p. 10, ¶ 47]. He further alleges DIRECTV had a policy of imposing chargebacks if there were issues with an

equipment installation job, an allegation that may be relevant to the minimum wage issue in the event plaintiff is ultimately determined to be an employee. Thus, in support of his allegations that DIRECTV violated the FLSA's overtime and minimum wage requirements, Collins pleads "other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645.

Collins therefore plausibly alleges DIRECTV failed to pay him the minimum wage and overtime pay required under the FLSA.[4]

C. "Willful" Violation of the FLSA

Finally, DIRECTV argues Collins's claims are barred in part by the FLSA's two-year statute of limitations. It contends Collins fails to allege any facts which would establish it "willfully" violated the FLSA, which would extend the FLSA's statute of limitations to three years. [Dkt. #16, pp. 19–20].

An FLSA action for unpaid minimum wages or overtime compensation must be commenced "within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An FLSA claim "is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes v. Region VII Area Agency on Aging,* 542 F.3d 169, 187 (6th Cir. 2008) (internal quotations omitted). An employer's violation of the FLSA is willful if "the employer either knew or showed reckless disregard for the matter

---

[4] Here, too, other courts considering similar allegations brought against DIRECTV have largely found them sufficient to state plausible claims for violations of the FLSA's minimum wage and overtime requirements. *See Alston*, 2015 WL 2451219, at *4; *Doucette*, 2015 WL 2373271, at *6–8; *Berger,* 2015 WL 1799996, at *8–9; *Renteria–Camacho,* 2015 WL 1399707, at *2–3; *Arnold,* 2011 WL 839636, at *7; *but see Chesley*, 2015 WL 3549129, at *5–7 (denying defendants' motion to dismiss plaintiffs' overtime compensation claim, but granting motion to dismiss plaintiffs' minimum wage claim).

of whether its conduct violated the statute." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)). Fed. R. Civ. P. 9(b) allows a plaintiff to plead "[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally," though such allegations remain subject to *Twombly* and *Iqbal*'s plausibility requirements. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).

Here, Collins alleges, in great detail, a system by which DIRECTV deliberately attempted to shirk its responsibilities to its employees by misclassifying them as independent contractors. He alleges DIRECTV's provider network "is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA." [*Id.*, p. 6, ¶ 23]. He also provides specific allegations regarding DIRECTV's policies and practices, asserting that the "net effect" of these policies and practices is that DIRECTV "willfully fail[s] to pay minimum wage and overtime compensation. . . ." [*Id.*, p. 9, ¶ 42]. These detailed allegations regarding policies DIRECTV allegedly implemented with the intent of evading the FLSA present sufficient factual matter, taken as true, to plausibly suggest DIRECTV either knew or showed reckless disregard for the matter of whether its conduct violated the FLSA.[5] Thus, Collins's allegations plausibly suggest the three-year statute of limitations applies to his claims. And because he asserts the alleged violations occurred during or after January 2010, less than three years before he opted into the *Lang* class in August 2012, his claims fall within the limitations period.

---

[5] *See Doucette*, 2015 WL 2373271, at *5, and *Alston*, 2015 WL 2451219, at *4 (holding plaintiffs plausibly alleged that DIRECTV willfully violated the FLSA); *but see Chesley*, 2015 WL 3549129, at *7 (holding DIRECTV's alleged actions "do not rise to the level of willfulness").

## IV.     Conclusion

WHEREFORE, DIRECTV's Motion to Dismiss [Dkt. #16] is denied, and Collins's Conditional Motion for Time Within Which to Seek Leave to Amend Should Court Grant Defendants' Motion to Dismiss [Dkt. #22] is moot.

IT IS SO ORDERED this 8th day of July, 2015.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT